**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMRO NADDY,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. NEWS & WORLD REPORT, L.P., *et al.*,<br><br>*Defendants*. | No. 25-cv-04499 (DLF) |

**MEMORANDUM OPINION**

Amro Naddy sued his former employers, U.S. News & World Report, L.P., and 360 Reviews, LLC (collectively, U.S. News), in D.C. Superior Court for breach of contract, failure to pay wages under D.C. law, and retaliatory termination. *See* Compl., Dkt. 1-1. U.S. News removed the action to this Court. *See* Not. of Removal, Dkt. 1. Before the Court is Naddy's Motion to Remand, Dkt. 8, and U.S. News's Partial Motion to Dismiss, Dkt. 7. For the reasons that follow, the Court will deny the motion to remand and grant in part and deny in part the motion to dismiss.

## I. BACKGROUND

U.S. News is a digital media company that provides online reviews of products and services. Compl. ¶ 14. In 2018, U.S. News hired Naddy to run its online 360 Reviews division, which provides comparison reviews of consumer product and business solutions. *Id.* ¶¶ 15–16. The 360 Reviews platform is operated by defendant 360 Reviews, LLC, an affiliate of U.S. News & World Report. *Id.* ¶ 16.

In July 2020, U.S. News provided Naddy with a Long-Term Incentive Compensation (LTIC) Plan "to set forth achievable annualized revenue thresholds for [him] to endeavor to meet."

Bogert Decl., Ex. 1 at 1 (2020 LTIC Plan), Dkt. 7-3; Compl. ¶ 20. The 2020 LTIC Plan sets four revenue thresholds, specifies how U.S. News calculates whether Naddy's division met those thresholds, and provides for payments he would receive upon satisfying each threshold. 2020 LTIC Plan at 1–5. Under the Plan's terms, Naddy would remain eligible for prorated LTIC payments if he resigned or was terminated without cause, but would forfeit future payments if terminated for cause. *Id.* at 5. The 2020 LTIC Plan does not bear the signature of either Naddy or a representative of U.S. News. *Id.* at 6.

Later, in April 2022, U.S. News provided Naddy with a second LTIC plan. Compl. ¶ 24. The 2022 Plan states that Naddy met each revenue threshold under the 2020 Plan and was eligible for all payments available under that Plan. Bogert Decl., Ex. 2 at 1 (2022 LTIC Plan), Dkt. 7-4. Unlike the 2020 Plan, the 2022 Plan contains Naddy's signed acknowledgment that he had received, read, and understood it. The acknowledgment also states that U.S. News's "decisions . . . with respect to the Plan are final." *Id.* at 4.

U.S. News also provided Naddy with a Management Incentive Plan (MIP) in May 2024, offering him bonuses of up to $150,000 based on 2024 revenue, profits, and other milestones. Compl. ¶ 28; Naddy Decl., Ex. 1 (2024 MIP), Dkt. 9-2.

Relatedly, U.S. News maintains a Severance Pay Plan, which is summarized in its Employee Handbook. Compl. ¶ 50; Bogert Decl., Ex. 3 (Handbook), Dkt. 7-5. The Handbook states that an employee "may be eligible to receive severance pay" following an involuntary termination "provided they sign an Agreement and General Release," the terms of which "are determined in the sole discretion of U.S. News." Handbook ¶ 5.3. The severance pay provision of the Handbook emphasizes that it is only a summary of U.S. News's Severance Pay Plan and that "[e]ligibility and other terms related to severance pay are governed by" a separate "Severance

Pay Plan document." *Id.* The Handbook explicitly states that "[n]othing in this handbook or otherwise should be understood as creating a contract" and that it is "not a contract." *Id.* ¶¶ 1.2, 2.2.

According to Naddy, he accepted the 2020 and 2022 LTIC Plans alongside the 2024 MIP and continued to work for U.S. News through September 2025 in reliance on the compensation provided under those three plans. Compl. ¶ 31. Applying their terms, he alleges that he was entitled to $1.5 million in payments during his final year of employment, as a result of meeting the highest revenue threshold under the 2020 LTIC Plan, *id*. ¶ 23; that he was entitled to $250,000 in payments to be paid out through June 2026, as a result of reaching the first revenue threshold under the 2022 LTIC Plan, *id*. ¶ 26; and finally, that he was entitled to a bonus of $132,350 in 2025 based on the 2024 MIP, *id*. ¶ 28.

U.S. News's financial difficulties eventually led to disputes over Naddy's compensation in 2025. *Id.* ¶¶ 32–33. Thereafter, U.S. News provided Naddy with its calculations under the 2024 MIP and told him that he would receive only $71,398—rather than the $132,350 based on the formula set out in the 2024 MIP, *id.* ¶ 28—to be paid in two installments, in February and August 2025, *id.* ¶ 33. U.S. News paid the February installment but never paid the August one. *Id.* ¶¶ 35, 41. It also missed payments under the LTIC Plans. On March 31, 2025, the date Naddy was due one of his LTIC payments, U.S. News Chief Financial Officer Neil Maheshwari told him that, due to U.S. News's financial condition, the CEO did not "feel good" about making the LTIC payments. *Id.* ¶ 36. As a result, Naddy did not receive the payment due that day, *id.* ¶ 37, and in June 2025, U.S. News proposed a revised and reduced LTIC plan, which Naddy rejected, *id.* ¶ 38. Later that month, Naddy received a partial payment toward the LTIC payment that had been due in March.

*Id.* ¶ 39. But U.S. News never made a separate payment that was due on June 30, 2025, as provided by the 2022 LTIC Plan. *Id.* ¶ 40.

After several missed payments, in September 2025, Naddy sent an email to U.S. News leadership demanding payment of his LTIC and MIP compensation and asserting that the company had "breached its obligations under its contracts with [him] and illegally withheld [his] earned wages." *Id.* ¶¶ 42–43. The next day, Maheshwari told Naddy he could either accept a reduced amount to "get some cash" and keep his reputation or the company would terminate him "for cause" so it could withhold his remaining LTIC payments. *Id.* ¶ 45. When Naddy asked what the "cause" for termination would be, Maheshwari responded that "cause" was not defined and that the parties would "be researching and fighting over it with lawyers." *Id.* ¶ 46. Two hours after this meeting, Maheshwari emailed Naddy terminating him for cause. *Id.* ¶ 49. U.S. News did not pay Naddy a severance, nor did it pay him the remaining LTIC and MIP payments due. *Id.* ¶ 50.

Naddy filed this action in D.C. Superior Court on October 17, 2025, asserting six counts: breach of contract based on the 2020 and 2022 LTIC Plans (Count I); breach of oral contract based on the 2024 MIP (Count II); breach of contract based on the Employee Handbook's severance provision (Count III); failure to pay wages under D.C. Code §§ 32-1302 and 32-1304, based on the LTIC Plans, MIP, and severance benefits (Count IV); failure to pay wages upon discharge under D.C. Code § 32-1303 (Count V); and retaliation under D.C. Code § 32-1311 (Count VI). *Id.* ¶¶ 51–92.

U.S. News and 360 Reviews timely removed the action to this Court on December 23, 2025, invoking diversity jurisdiction under 28 U.S.C. § 1332. Notice of Removal, Dkt. 1. Naddy subsequently moved to remand, Dkt. 8, and the defendants moved to dismiss Counts I through V under Federal Rule of Civil Procedure 12(b)(6), Dkt. 7. These motions are now ripe for resolution.

## II. LEGAL STANDARD

### A. Removal

"Ordinarily, the plaintiff is entitled to select the forum in which he wishes to proceed." *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 413 (D.C. Cir. 2014). But a defendant may remove a civil action filed in state court to "the district court of the United States for the district and division embracing the place where such action is pending" so long as the district court has original subject matter jurisdiction over the case. 28 U.S.C. § 1441(a). As relevant here, district courts have diversity jurisdiction over cases in which "*each* defendant is a citizen of a different State from *each* plaintiff," *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978), and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332(a). The Court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See, e.g.*, *MSP Recovery Claims, Series LLC v. Pfizer, Inc.*, 728 F. Supp. 3d 89, 102 (D.D.C. 2024). If the Court lacks subject matter jurisdiction over a removed case, it must remand the action to state court. See 28 U.S.C. § 1447(c).

### B. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550

U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," *Iqbal*, 556 U.S. at 678, but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility," *id.* (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited, *id.*; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III. ANALYSIS

### A. Removal

A defendant seeking to remove a case to federal court must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). "When

a plaintiff seeks remand of a case removed to federal court, the court generally evaluates the defendant's notice of removal like it would a complaint: it asks whether its plausible factual allegations, accepted as true, establish federal jurisdiction." *Pleznac v. Equity Residential Mgmt., L.L.C.*, No. 17-CV-2732, 2018 WL 10196622, at *2 (D.D.C. May 8, 2018); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84, 89 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

U.S. News's notice of removal contains factual allegations that, accepted as true, establish that this Court has diversity jurisdiction. The notice adequately alleges complete diversity. *See* Not. of Removal ¶¶ 5–13; Compl. ¶¶ 58, 64, 70, 77, 84, 92; 28 U.S.C. § 1332. Naddy is a citizen of Virginia. Not. of Removal ¶ 5. U.S. News is a Delaware limited partnership, Not. of Removal ¶ 6, and therefore a citizen of "each State or foreign country of which any of its partners is a citizen," *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569 (2004). U.S. News's partners are citizens of New York, Florida, and Delaware, and none is a citizen of Virginia. Not. of Removal ¶ 7. The limited liability company, 360 Reviews, is a Delaware company, *id.* ¶ 8, whose citizenship is "determined by the citizenship of its members." *Evans v. Adams, Morris & Sessing*, No. 24-cv-02469, 2024 WL 4227311, at *2 (D.D.C. Sept. 18, 2024). All members trace back to U.S. News, and none is a citizen of Virginia. *Id.* ¶¶ 8–9. The amount in controversy exceeds $75,000. *See* Not. of Removal ¶¶ 5–13.

Although these allegations are sufficient to establish complete diversity at the pleading stage, *see Owen Equip.*, 437 U.S. at 373, Naddy contends that the removal notice is deficient because it does not identify U.S. News's partners or 360 Reviews' members by name, Pl.'s Mot. to Remand at 1, Dkt. 8-1. But Naddy identifies no statutory or binding authority that requires a

notice of removal to name each partner or member. Section 1446(a) requires only a "short and plain statement" of the grounds for removal. 28 U.S.C. § 1446(a). Here, the notice adequately alleges the citizenship of the defendants' partners and members and affirmatively represents that none shares Naddy's Virginia citizenship. Not. of Removal ¶¶ 6–9. At this stage, the Court asks only whether the notice's factual allegations, accepted as true, establish federal jurisdiction. *Pleznac*, 2018 WL 10196622, at *2. They plainly do.

Naddy further argues that the notice is deficient because it fails to establish that the parties were diverse when he commenced this action. Pl.'s Mot. to Remand at 5. Although diversity must exist both when the action is commenced and when the case is removed, *see Shah v. Saxena*, No. 23-cv-03127, 2025 WL 1865034, at *4 (D.D.C. July 7, 2025), the notice's use of the present tense alone does not suggest that the parties' citizenship changed since this action was filed in Superior Court. Moreover, the Court may look beyond the notice of removal to determine whether diversity of citizenship exists. *See id.* (explaining that citizenship must appear "affirmatively in the petition for removal, or elsewhere in the record" (citation omitted)). U.S. News has affirmatively represented that the parties have been completely diverse since Naddy commenced this action in Superior Court, Defs.' Opp'n to Pl.'s Mot. to Remand 9, Dkt. 11, and Naddy has presented no evidence to the contrary.

Accordingly, the Court will deny Naddy's motion to remand.

**B. Count I: Breach of LTIC Contracts**

Naddy has stated a claim for breach of contract based on the two LTIC Plans. To state a claim for breach of contract under District of Columbia law, which applies here, a plaintiff must allege "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Brown v. Sessoms*, 774 F.3d 1016,

1024 (D.C. Cir. 2014) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). Naddy alleges that U.S. News provided him the LTIC Plans, that he accepted the Plans and continued working in reliance on their promised compensation, that he satisfied the conditions for the payments at issue, and that U.S. News failed to make payments required by the Plans. Compl. ¶¶ 20–26, 31, 36–40, 51–58. These allegations plausibly establish that the LTIC Plans were valid contracts, that U.S. News was obligated to make the payments Naddy claims, and that U.S. News breached those obligations by failing to do so.

U.S. News challenges the enforceability of the LTIC Plans as contracts and further argues that even if the Plans are enforceable, U.S. News did not breach them. The Court disagrees.

*First,* U.S. News contends that Naddy provided no consideration for the LTIC Plans because he was already employed by U.S. News and did not undertake any new obligation in exchange for the payments contemplated therein. Defs.' Mot. 7. But "the District of Columbia adheres to the majority position that continued employment may serve as consideration for a new agreement if the employment is at-will." *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 343 (D.D.C. 2011) (citing *Kauffman v. Int'l Bhd. of Teamsters*, 950 A.2d 44, 48 (D.C. 2008)). Likewise, "the ability to terminate the employment relationship at will necessarily includes the ability to alter its terms." *Kauffman,* 950 A.2d at 48. Agreements to increase or alter an at-will employee's compensation, like the LTIC Plans, "are not unilateral and without consideration" because neither party is bound to continue performance. *Id.* "[F]uture performance by each [is] valid consideration for the change in terms." *Id.* Naddy alleges that U.S. News offered him the LTIC Plans, that he accepted them, and that he continued working for U.S. News for years thereafter in reliance on the promised compensation. Compl. ¶¶ 20–31. Those allegations plausibly establish consideration for the LTIC Plans.

*Second*, U.S. News argues that Naddy did not assent to the 2020 LTIC Plan because it does not bear his signature, and he has not pled his assent to the terms of the Plan. Defs.' Mot. 7–8. A signature is "not essential" to contract formation under D.C. law, however, and the parties' assent may instead be manifested through their conduct. *See Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1301 (D.C. Cir. 2002) (quoting *Davis v. Winfield*, 664 A.2d 836, 837 (D.C. 1995)). Further, in the employment context, an at-will "employee's continued service amounts to acceptance of [a] modification." *Kauffman*, 950 A.2d at 48; *see also National Rifle Ass'n v. Ailes*, 428 A.2d 816, 821–22 (D.C. 1981) (recognizing that an employee's continued employment with knowledge of a new compensation policy may imply agreement to its terms). As noted, Naddy alleges that he accepted the LTIC Plans and continued working for U.S. News from 2020 through September 2025, in reliance on the promised compensation. Compl. ¶¶ 20, 31. Those allegations are sufficient, at least at the pleading stage, to establish assent, notwithstanding the absence of signatures. Compl. ¶ 31. The signed 2022 LTIC Plan further supports that inference because it expressly stated that Naddy had "met each Revenue Threshold . . . and therefore is eligible for all payments available under the July 1, 2020 Plan." 2022 LTIC Plan 1, 4; Compl. ¶ 24.

*Third*, U.S. News asserts that the 2020 LTIC Plan is barred from enforcement by the statute of frauds because it could not have been performed within one year of its formation. Defs.' Mot. at 8 (citing D.C. Code § 28-3502). Because the statute of frauds is an affirmative defense that the defendant bears the burden of establishing, a court will dismiss on that basis only if it is apparent from the face of the complaint that the plaintiff cannot succeed. *Donald Marshall Berlin v. Bank of Am., N.A.*, 101 F. Supp. 3d 1, 13–14 (D.D.C. 2015). That is not the case here. To start, the one-year provision of the statute of frauds "has long been construed narrowly and literally" and is inapplicable if "any contingent event could complete the terms of the contract within one year."

*Hodge v. Evans Fin. Corp.*, 823 F.2d 559, 561–62 (D.C. Cir. 1987). Here, the 2020 LTIC Plan conceivably could have been fully performed within a year if, for example, Naddy had resigned or been terminated within the first year, in which case no payments would have been owed. Moreover, D.C. law recognizes that partial or complete performance may remove an agreement from the statute of frauds. *See Fitzgerald v. Hunter Concessions, Inc.*, 710 A.2d 863, 865 (D.C. 1998). Naddy alleges that he fully performed his obligations under the 2020 LTIC Plan by meeting the revenue thresholds and that U.S. News partially performed by making payments under the Plan. Compl. ¶¶ 23, 26, 39. Those allegations are sufficient to make dismissal on statute-of-frauds grounds premature. *See Fitzgerald*, 710 A.2d at 865 (holding dismissal premature where the plaintiff alleged that he fully performed his obligations and the defendant had made payments over several years).

*Fourth*, U.S. News argues that even if the LTIC Plans were contracts, it did not breach them because the Plans provide that Naddy would forfeit future payments if terminated for cause. Defs.' Mot. 8–9. Although U.S. News labeled Naddy's firing as for cause, Naddy alleges that U.S. News lacked cause to terminate him and that its asserted cause was pretextual. Compl. ¶¶ 45–49. At this early stage, the Court must accept those well-pleaded allegations as true.

*Finally*, U.S. News contends that the LTIC Plans give U.S. News "absolute discretion" to withhold otherwise earned payments. Defs.' Mot. 8 (quoting *Daisley v. PNC Bank, N.A.*, No. 03-cv-01820, 2007 WL 2071682, at *4 (D.D.C. July 16, 2007)). U.S. News relies on provisions of the LTIC Plans that state that the Company's "decisions" and "amounts and calculations" under the Plans are final. *Id.* at 8–9. But those provisions, read in context, plainly do not give U.S. News discretion to refuse payment altogether after the contractual conditions for payment were allegedly satisfied. *See* 2020 LTIC Plan 3–4 (providing that Naddy "shall receive the amounts" specified if

revenue targets are met and that amounts "when earned, shall be paid" on identified dates); 2022 LTIC Plan 3 (same). At most, those provisions leave the scope of U.S. News's authority uncertain, and that uncertainty cannot be resolved against Naddy on a motion to dismiss. *See MSP Recovery Claims, Series LLC v. Pfizer, Inc.*, 728 F. Supp. 3d 89, 102 (D.D.C. 2024) ("[T]he interpretation of ambiguous contract language presents questions of fact that the Court need not resolve on a motion to dismiss." (citation modified)).

Because Naddy has plausibly alleged that the LTIC Plans are enforceable agreements, that he satisfied the conditions for payment, and that U.S. News breached those agreements, the Court will deny U.S. News's motion to dismiss Count I.

**C. Count II: Breach of MIP Contract**

Naddy has similarly alleged a breach of contract claim based on the 2024 MIP. The complaint alleges that U.S. News offered and Naddy accepted the 2024 MIP, that Naddy achieved the MIP's financial and management targets, and that U.S. News failed to pay him the amounts due under the MIP. Compl. ¶¶ 28–35, 60–63. Those allegations plausibly establish the existence of an agreement, breach, and damages. *See Brown*, 774 F.3d at 1024.

According to U.S. News, Naddy's MIP claim is too indefinite to be enforceable because the complaint does not identify the applicable milestones, methods for calculating revenue and profits, sliding scale, or payment dates. Defs.' Mot. at 10–11. With the exception of the payment date, however, the MIP supplies all of the terms U.S. News contends are missing. And because Naddy expressly relies on the MIP in his complaint, the Court may consider the text of the document itself in resolving the motion to dismiss. *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999). The MIP is therefore sufficiently definite as to those terms.

Although the MIP does not specify when any earned compensation must be paid, that omission does not render the agreement indefinite. "[W]hat terms of the parties' alleged agreement are material . . . is a question of fact that depends on the particular circumstances of the case." *Blackstone v. Brink*, 63 F. Supp. 3d 68, 77 (D.D.C. 2014). Where a contract "does not specify a time for performance, 'the law implies that it must be done within a reasonable time.'" *Washington Props., Inc. v. Chin, Inc.*, 760 A.2d 546, 548 (D.C. 2000) (quoting *Flack v. Laster*, 417 A.2d 393, 400 (D.C. 1980)). As the complaint alleges, U.S. News ordinarily paid MIP bonuses the following year, Compl. ¶ 29, and U.S. News proposed to pay Naddy's 2024 MIP bonus in February and August 2025, in a reduced amount, *id.* ¶ 33; *see Howard Univ. v. Best*, 484 A.2d 958, 968–969 (D.C. 1984) ("usual practices surrounding a contractual relationship" may become part of the contract absent "express term to the contrary"). These allegations supply a plausible basis for determining when payments were due.

The Court will therefore deny U.S. News's motion to dismiss Count II.

**D. Count III: Breach of Employee Handbook**

Naddy fails to state a claim based on the Employee Handbook because unlike the 2020 and 2022 LTIC Plans and the 2024 MIP, the Employee Handbook does not create a contractual entitlement to severance benefits.

In assessing whether Naddy has alleged a claim, the Court may consider the Handbook because Naddy expressly relies on it as the source of his alleged right to severance. *See Vanover*, 77 F. Supp. 2d at 98 (relying on a single chapter of a personnel manual at the motion to dismiss stage); *see also Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 378 (D.D.C. 2018). U.S. News submitted the relevant severance provision of the Handbook with a declaration attesting to its authenticity. *See* Decl. of Daniel Bogert, Dkt. 7-2. And Naddy has not challenged its

authenticity, nor has he identified any portion of the Handbook which would alter the meaning of the provision on which U.S. News relies. *See* Pl.'s Opp'n 17.

But the Handbook is not an enforceable contract. Under D.C. law, policies in an employee handbook that expressly disclaims contractual obligations are generally not enforceable. *Grove v. Loomis Sayles & Co., L.P.,* 810 F. Supp. 2d 146, 149 (D.D.C. 2011) (collecting cases). Indeed, U.S. News's Employee Handbook provides that "[n]othing in this handbook or otherwise should be understood as creating a contract" and that "[t]he handbook is not a contract." Employee Handbook ¶¶ 1.2, 2.2. The severance provision itself reinforces those disclaimers, stating that it is merely a "summary" of a separate Severance Pay Plan document that governs employees' eligibility and benefits. *Id.* ¶ 5.3. And the severance provision does not promise severance in mandatory terms. Instead, it merely states that an employee "*may* be eligible to receive severance pay" and employees "will *typically* receive one-week of base pay for each full year of service." *Id.* (emphasis added). That permissive language further confirms that the Handbook does not create a contractual entitlement to severance. *See Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, 60 (D.D.C. 2018) (use of permissive language in employee handbook made clear that the employer did not intend to create contractual obligations).

Because the Handbook expressly disclaims contractual obligations and does not promise severance benefits in mandatory terms, it cannot plausibly support Naddy's breach-of-contract claim. Accordingly, the Court will grant the motion to dismiss Count III without prejudice.[1]

[1] Because Count III alleges breach of the Handbook, *see* Compl. ¶¶ 65–70, the Court need not determine whether the separate Severance Pay Plan creates any rights or obligations, or whether any claim arising under that Plan would be preempted by ERISA.

**E. Counts IV and V: D.C. Wage Claims**

Counts IV and V allege that Defendants violated the D.C. Wage Payment and Collection Law by failing to pay Naddy his LTIC payments, MIP bonus, and severance, in violation of D.C. Code §§ 32-1302, 1303 and 1304. Compl. ¶¶ 71–89. Those D.C. Code provisions, which address issues of late and unpaid "wages," *see* D.C. Code §§ 32-1302, 1303 and 1304, do not apply across the board here.

The D.C. Wage Payment and Collection Law defines "wages" to include "all monetary compensation" owed to an employee after lawful deductions, including bonuses and "other remuneration promised or owed" under an employment contract. D.C. Code § 32-1301(3). Discretionary payments are not "wages" under this definition because such "payments are not owed, but are given only by leave of the employer." *Dorsey v. Jacobson Holman, PLLC*, 756 F. Supp. 2d 30, 36 (D.D.C. 2010). Compensation constitutes wages when the employee is entitled to it under the governing employment agreement and applicable conditions notwithstanding employer discretion. *See, e.g.*, *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 134 (D.D.C. 2018) (holding that compensation constitutes wages where payment is "automatic and mandatory" upon satisfaction of specified conditions).

As to the LTIC payments and MIP bonus, for the reasons previously stated, Naddy has plausibly alleged that U.S. News owed him payments and a bonus. And at this stage, the Court cannot conclude, as U.S. News asserts, Defs.' Mot. 14–15, that the disputed compensation was discretionary rather than wages owed under the parties' agreements. Accordingly, to the extent that Counts IV and V are based on the LTIC payments and MIP bonus, the motion to dismiss will be denied.

As pleaded, Counts IV and V also seek severance as wages based on the Employee Handbook. See Compl. ¶¶ 50, 66–70, 74, 82. But the Handbook does not create a contractual entitlement to severance, so those allegations do not establish severance "owed" as wages. *See Vasquez*, 302 F. Supp. 3d at 60; *Grove v. Loomis Sayles & Co., L.P.,* 810 F. Supp. 2d at 149. Accordingly, the motion to dismiss will be granted without prejudice to the extent Counts IV and V seek recovery of severance benefits based on the Handbook.

**CONCLUSION**

For the reasons stated, Naddy's Motion to Remand, Dkt. 8, is denied. U.S. News's Partial Motion to Dismiss, Dkt. 7, is granted in part and denied in part. The motion is denied as to Counts I and II; granted without prejudice as to Count III; and granted in part and denied in part as to Counts IV and V. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

September 28, 2026